# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| JONATHAN K. NOEGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-04231-CV-RK |
| | ) | |
| COMMISIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER AFFIRMING THE ALJ'S DECISION</u>

Before the Court is Plaintiff's appeal brought under 42 U.S.C. § 405(g) seeking review of Defendant Commissioner of Social Security Administration's ("SSA") denial of disability benefits as rendered in a decision by an Administrative Law Judge ("ALJ"). For the reasons below, the decision of the ALJ is **AFFIRMED**.

## Standard of Review

The Court's review of the ALJ's decision to deny disability benefits is limited to determining if the decision "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is less than a preponderance of the evidence, but is 'such relevant evidence as a reasonable mind would find adequate to support the [ALJ's] conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether existing evidence is substantial, the Court takes into account "evidence that detracts from the [ALJ's] decision as well as evidence that supports it." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). "If the ALJ's decision is supported by substantial evidence, [the Court] may not reverse even if substantial evidence would support the opposite outcome or [the Court] would have decided differently." *Smith v. Colvin*, 756 F.3d 621, 625 (8th Cir. 2014) (citing *Davis*, 239 F.3d at 966). The Court does not "re-weigh the evidence presented to the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Baldwin v. Barnhart*, 349 F.3d

549, 555 (8th Cir. 2003)).  The Court must "defer heavily to the findings and conclusions of the [ALJ]."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citation omitted).

## Discussion

By way of overview, the ALJ found that Plaintiff has the following severe impairments: the residual effects of a cerebrovascular accident (i.e., a stroke); depression; a personality disorder; osteoarthritis; degenerative joint disease; osteoarthritis of the right knee; rotator cuff syndrome; history of tenosynovitis of the thumb; Dupuytren's contracture with weakness and limited flexion of the left third and fourth fingers; chronic obstructive pulmonary disease (COPD); and obstructive sleep apnea.  The ALJ also determined that Plaintiff has the following non-severe impairments: probable carpal tunnel syndrome, migraines, vision problems, muscle spasms, left foot problems, and obesity.  However, the ALJ found that none of Plaintiff's impairments, whether considered alone or in combination, meet or medically equal the criteria of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1 ("Listing").  The ALJ then found that despite his limitations, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations:

> [H]e can never climb ladders, ropes or scaffolds.  He can occasionally climb ramps or stairs.  He can occasionally balance, stoop, kneel, crouch, or crawl.  He can handle frequently.  He can frequently reach, except overhead reaching with the right arm is limited to occasional.  He must avoid concentrated exposure to extreme cold, extreme heat, wetness or humidity, and excessive vibration.  He must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, and gases. He must avoid concentrated exposure to workplace hazards such as dangerous machinery and unprotected heights.  He can perform work limited to simple routine tasks with no fast-paced production work.  He can have occasional interaction with the public, coworkers, and supervisors.  He should be allowed to use a cane to ambulate.

(Tr. 28.)  The ALJ found that considering Plaintiff's age, education, work experience, and RFC, prior to January 19, 2018, Plaintiff could perform jobs that existed in significant numbers in the national economy, specifically the jobs of patcher, polisher, and table worker.  As a result, the ALJ concluded that Plaintiff was not disabled prior to January 19, 2018. The ALJ also concluded that

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

Plaintiff became disabled on January 19, 2018, because he turned 50 and his age category changed. This dispute is about whether Plaintiff is entitled to supplemental security income for the time period between the effective date of his application and January 19, 2018

On appeal, Plaintiff argues that the ALJ (1) improperly relied on the opinion of Charles Watson, Psy.D., who is a non-examining state agency psychologist, and (2) failed to give appropriate weight to the opinion of Doak Phillips, M.D., who is Plaintiff's treating physician. The Court disagrees.

## I. Dr. Watson

Dr. Watson's opinion contains a narrative discussion of plaintiff's abilities and concludes that Plaintiff has only moderate mental limitations. (Tr. 90-91, 94-97.) Plaintiff argues that the ALJ erred in giving Dr. Watson's opinion "great weight" because (1) "[t]he training and work experience of Psy.D. Watson is not apparent to support his qualifications;" (2) "[t]here is no basis for assuming that he has the expertise or training to provide conclusions as to Plaintiff's physical abilities;" and (3) "[t]here are close to 1000 pages of medical treatment since the date of Psy.D. Watson's review of the medical file" on February 2, 2016 (Tr. 98). (Doc. 15 at 12, Plaintiff's Br.)

The first argument fails because, as the ALJ noted, Dr. Watson is a licensed psychologist and is thus qualified to issue an opinion about Plaintiff's mental abilities. (Tr. 32, 91.) *See* 20 C.F.R. §§ 416.902(a)(2) ("Acceptable medical source means a medical source who is a . . . [l]icensed psychologist . . . ."); 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

The second argument fails because, although Dr. Watson's narrative strays somewhat into Plaintiff's physical abilities (Tr. 90-91), his conclusions are limited to Plaintiff's mental abilities (Tr. 94-97). Furthermore, the ALJ relied only on Dr. Watson's opinion that Plaintiff's "combined mental symptomology did not actually cause more than moderate mental, cognitive, or social limitations." (Tr. 32.)

The third argument fails because the ALJ found that Dr. Watson's opinion "is well-supported by the totality of the objective evidence, including the claimant's treatment notes, pattern of treatment, and expansive range of daily activities." (*Id.*) The ALJ's review spanned the "totality of the relevant period" and is consistent with the evidence. (*See* Tr. 29-30

(ALJ's opinion). For example, Plaintiff stated in his function report that he was able to shop, pay bills, handle a savings account, count change, use a checkbook, and complete money orders. (Tr. 204-06.) At the time of the hearing in November 2017, he was able to drive, take care of his own personal care, and prepare simple meals. (Tr. 57, 63-64.) In February 2017, his anxiety was "well-controlled" with medication. (Tr. 1572.) A treatment note also states that there were "minimal deficits" from his stroke, and lab exams in June 2017 showed no evidence of significant abnormalities that could be relevant to a stroke or memory problems. (Tr. 656, 1936.) *See Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) ("It is well settled that an ALJ may consider the opinion of an independent medical advisor as one factor in determining the nature and severity of a claimant's impairment," including that of a non-examining consultant.) (quotation marks and citations omitted); *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) ("The ALJ did not err in considering [a state agency psychological consultant's] opinion along with the medical evidence as a whole, where [the] opinion was consistent with the evidence.").

## II.      Dr. Phillips

Plaintiff next argues that (1) the ALJ "formed her own medical opinion regarding Plaintiff's impairments instead of carefully considering medical evidence from Plaintiff's treating sources," and (2) the ALJ's decision is not supported by substantial evidence because "no medical advisor was utilized to assess Plaintiff's physical limitations." (Doc. 15 at 13, 15, Plaintiff's Br.)

Regarding the first argument, an ALJ may not "engag[e] in medical conjecture," *Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003), and must "give good reasons" for discounting a treating source opinion, 20 C.F.R. § 416.927(c)(2); *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (cleaned up). However, "[a] treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Id.* (cleaned up). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (cleaned up).

Here, the ALJ gave partial weight to Dr. Phillips's opinion. (Tr. 13, 1951-54.) Specifically, the ALJ found that Plaintiff cannot do manual labor involving light or heavier exertional work

based on Dr. Phillips's opinion. (Tr. 32.) However, the ALJ rejected Dr. Phillips's conclusions that Plaintiff would need excessive additional breaks and would be off task a significant portion of the day as inconsistent with the objective evidence and overall pattern of treatment. (*Id.*) This is a sufficient reason to discount Dr. Phillips's opinion, and the ALJ's conclusions are consistent with the evidence.

As discussed above, treatment notes state that there were "minimal deficits" from Plaintiff's stroke (Tr. 656, 1936), his anxiety was controlled with medication (Tr. 1572), and he was able to do a wide range of daily activities (Tr. 57, 63-64, 204-06). The record also supports the ALJ's conclusion that Plaintiff's symptoms are not as severe as he claims. (Tr. 28-32.) Plaintiff testified during the hearing before the ALJ that he was not able to work even before his stroke—as far back as 1996—due to trouble with his hands, walking, and sitting. (Tr. 74-75.) However, treatment notes show normal strength in his extremities (Tr. 719, 1341, 1935), normal grip strength (Tr. 1466), stable back pain with medication (Tr. 1467), an ability to sit and stand independently (1494) and to walk down stairs several times during an appointment to smoke (Tr. 719), and failure to comply doctors' orders to use a CPAP machine[2] everyday for sleep apnea (Tr. 72-73, 656-57). *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (ALJ may consider failure to follow doctors' orders). A treatment note also states as follows: "Formal testing should be viewed with significant caution. His performance on a test of memory effort was significant for low effort and he responses [sic] on a test of malingering was positive for symptom exaggeration." (Tr. 676.) Although some of Dr. Phillips's findings are supported by diagnostic testing, his opinions on the severity of Plaintiff's symptoms are largely based on Plaintiff's own subjective reports. (Tr. 13, 1951-55.) *See McDade v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013) (the ALJ properly discounted a medical opinion when it appeared the medical opinion relied largely on the plaintiff's subjective complaints); *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (the Court "will not substitute its opinion for the ALJ's, who is in the better position to gauge credibility and resolve conflicts in the evidence").

Finally, Plaintiff's second argument fails because, although an RFC must be supported by "some medical evidence of the claimant's ability to function in the workplace," "[t]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations and quotation marks omitted). Dr. Phillips's opinion

---

[2] CPAP stands for continuous positive airway pressure.

and Plaintiff's treatment records are sufficient medical evidence to discern Plaintiff's abilities. The ALJ was not required to obtain an additional medical opinion about his physical abilities.

### Conclusion

Having carefully reviewed the record before the Court and the parties' submissions on appeal, the ALJ's decision is **AFFIRMED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  April 1, 2020